UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

COTY LEWIS,

        *Plaintiff,*

v.

SOLE LAW, PLLC,
KATHRYN SOLE,

        *Defendants.*

                                /

CASE NO. 1:21-cv-12846
DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

For the following reasons, I **RECOMMEND** that the Court **GRANT** Defendants' motion to dismiss (ECF No. 6) and **DISMISS** Plaintiff's complaint.

**II.  REPORT**

    **A.  INTRODUCTION**

The Fair Debt Collection Practices Act ("FDCPA") protects individuals from abusive debt collection practices—but only for a particular type of debt. To receive the FDCPA's expansive assortment of protections, an individual's debt must arise from a transaction for a good or service for personal, family, or household purposes. At issue here is whether a company who refers clients to a real estate brokerage has provided a service for personal, family, or household purposes, such that an individual responsible for payment of the referral fee can benefit from the FDCPA's protections.

1

### B. BACKGROUND

Acuity Real Estate Services operates a website which refers prospective clients to real estate brokerages throughout the country. (ECF No. 1-3, PageID.43). Seeking new clients who wished to purchase homes in the mid-Michigan area, a Re/Max New Image franchise located in Saginaw County entered into a referral agreement with Acuity through Acuity's website. (ECF No. 1, PageID.3–4, ¶ 13). Under their agreement, Acuity referred a group of prospective clients to Re/Max in exchange for thirty-five percent of the commission Re/Max received from any sale involving the prospective clients. (ECF No. 1-1, PageID.29). Coty Lewis, a "salesperson" for Re/Max, signed the agreement on behalf of his franchise. (ECF No. 1, PageID.3–4, ¶ 13; ECF No. 1-1, PageID.29–30).

The following year, Acuity sued Lewis in a Florida court, alleging that while Lewis brokered a sale on behalf of a client provided by Acuity, neither Lewis nor Re/Max paid Acuity its referral fee. (ECF No. 1, PageID.4–5, ¶¶ 16, 18). Kathryn Sole, a Florida attorney and the "managing member" of Sole Law PLLC, represented Acuity in this lawsuit and successfully obtained a judgment against Lewis. (*Id.* at PageID.2, 4–5, ¶¶ 2–3, 18, 21). With Sole's help, Acuity later obtained a garnishment of Lewis's wages. (*Id.* at PageID.5, ¶ 23).

According to Lewis, his case is not unique. Since 2014, Sole represented Acuity in thirty collection lawsuits. (*Id.* at PageID.7). In each case, despite entering into a referral agreement with a brokerage company, Acuity sued the individual "salesperson" who handled the referred clients. (*Id.*; ECF No. 1-6). Acuity sued each salesperson "in their personal capacity," and brought each suit in its "home forum of Hillsborough County, Florida." (ECF No. 1, PageID.14, ¶ 60; ECF No. 1-6).

After Sole obtained a garnishment on behalf of Acuity, Lewis filed a complaint against Sole and her law firm in this Court, alleging that Sole violated various provisions of the FDCPA by pursuing Acuity's lawsuit in a Florida court. (ECF No. 1). Sole—individually and on behalf of her firm—responded by moving for dismissal of Lewis's entire complaint, arguing that this Court lacks personal jurisdiction over Sole, and alternatively, that Lewis failed to state a plausible claim for relief under the FDCPA. (ECF No. 6).

### B. LEGAL STANDARDS

Defendants move for dismissal of Lewis's complain under Federal Rule of Civil Procedure 12(b)(2), for lack of personal jurisdiction, and, alternatively, under Rule 12(b)(6) for failure to state a claim. Where a defendant files a motion to dismiss under both 12(b)(2) and 12(b)(6), the Rule 12(b)(2) challenge must be addressed first because "the Rule 12(b)(6) challenge becomes moot if this court lacks" jurisdiction. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990); *see also Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 510 (6th Cir. 2006) ("[P]ersonal jurisdiction is a threshold determination . . . .").

#### 1. Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) allows defendants to move for dismissal for lack of personal jurisdiction. When faced with a "properly supported 12(b)(2) motion," district courts must choose between one of three procedural alternatives. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir, 1991). Specifically, the Court may (1) "rule" on the parties' "written submissions alone," (2) "permit discovery in aid of the motion," or (3) "conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tenn. Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). This decision is well within the district court's discretion. *Theunissen*,

935 F.2d at 1458; *see also MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017).

The plaintiff carries the burden of establishing personal jurisdiction. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 502 (6th Cir. 2020). The extent of the plaintiff's burden, however, depends on the court's method for resolving the motion. *Id.* at 505 (citing *Serras*, 875 F.2d at 1214). Where the Court decides to resolve the motion on "written submissions alone," the plaintiff need only make a prima facie showing of personal jurisdiction, and a plaintiff can make this showing "merely through the complaint." *Schnieder v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (internal quotation marks omitted) (quoting *Serras*, 875 F.2d at 1214); *Malone*, 965 F.3d at 505. To determine whether a Plaintiff has established a prima facie showing, the court must construe all facts "in the light most favorable to the plaintiff"—any factual disputes are "irrelevant." *Theunissen*, 935 F.2d at 1459; *Malone*, 965 F.3d at 505.

If the Court rules exclusively on the parties' written submissions, then the court's inquiry ends after determining whether the Plaintiff has made a prima facie showing. *See Malone*, 965 F.3d at 505. But if the Court instead chooses to conduct an evidentiary hearing, it must then employ a burden shifting framework which takes the defendant's factual allegations into consideration. *Id.* at 504–05. Under this framework, the plaintiff retrains the initial burden of establishing a prima facie showing of personal jurisdiction. *Id.* (citing *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Once the plaintiff makes this showing, the burden shifts to the defendant to "properly" support his or her motion "with evidence." *Id.* (citing *Theunissen*, 935 F.2d at 1458). If the defendant can provide evidence in support of its position, the burden then shifts back to the plaintiff to prove, by a preponderance of the evidence, that the

4

court has personal jurisdiction over the defendant.[1] *Malone*, 965 F.3d at 504; *see also Schneider*, 669 F.3d 693, 697. At this stage, the plaintiff "may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Malone*, 965 F.3d at 504 (quoting *Theunissen*, 935 F.2d at 1458).

Here, I suggest that the Court need not conduct a hearing or allow for additional discovery. Accordingly, Lewis need only establish a prima facie case of personal jurisdiction.

## 2. Federal Rule of Civil Procedure 12(b)(6)

A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

---

[1] The Sixth Circuit has not clearly articulated the appropriate standard where the district court allows discovery, but nonetheless resolves the 12(b)(2) motion without a hearing. In *Dean v. Motel 6 Operating L.P.*, the Court stated that generally, a prima facie standard applies in these situations; however, if there is no dispute "as to the facts or to the extent of discovery," then the plaintiff must prove personal jurisdiction by a preponderance of the evidence, even if the court does not hold a hearing. 134 F.3d 1269, 1272 (6th Cir. 1998). The Sixth Circuit has since called this language into question, recognizing it as dicta, and citing numerous cases where the Court ignored *Dean*'s exception to the prima facie standard. *Schneider*, 669 F.3d at 698 & n.7. Nonetheless, the Court has never reached a definitive holding, and the appropriate standard in these situations remains an "unsettled issue." *Stolle Mach. Co., LLC v. RAM Precision Industries*, 605 F. App'x 473, 480 n.5 (6th Cir. 2015).

## C. ANALYSIS

Defendants moves to dismiss Lewis's entire complaint, arguing that this Court does not have personal jurisdiction over them, and even if it did, Lewis fails to state a plausible claim for relief. I suggest that while the Court does have personal jurisdiction over the Defendants, Lewis has not stated a plausible claim under the FDCPA, and his complaint should be dismissed.

### 1. Personal Jurisdiction

Personal jurisdiction is a court's power to exercise authority over a defendant; without it, a court cannot adjudicate a claim against an individual defendant. 4 Charles Alan Wright et al., *Federal Practice and Procedure* § 1063 (4th ed. 2022) § 1063; *Jurisdiction*, Black's Law Dictionary (11th ed. 2019). To hold personal jurisdiction over a defendant, a federal court must be authorized by statute issue summons for that defendant. *See Omni Capital Intern., Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) (citing *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946)); *Bridgeport Music, Inc. v. Still N the Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003). However, even if the court is authorized to effect service on a defendant, its exercise of personal jurisdiction also must not deny the defendant due process.

Here, Federal Rule of Civil procedure 4(k) authorizes the Court to exercise personal jurisdiction over the Defendants. Rule 4(k) provides that "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . when authorized by a federal statute." Fed. R. Civ. P. 4(k)(1)(C). Thus, as long as there some federal statute authorizes the court to issue summons for the Defendants, then the court has personal jurisdiction. *C.T. v. Red Roof Inns, Inc.*, No. 19-5384. 2021 WL 2942483, at *7 (S.D. Ohio July 1, 2021).

The FDCPA provides this authorization. *Reese Bros., Inc., v. USPS*, 477 F. Supp. 2d 31, 39–40 (D.D.C. 2007). Under 28 U.S.C. § 3004 (2018), a defendant "may be served in any State." Courts routinely recognize that national service of process provisions, such as this, grant personal jurisdiction over any individual within the United States.[2] *Reese Bros, Inc.*, 477 F. Supp. 2d at 39 (collecting cases). Accordingly, because the FDCPA permits service of process on the Defendants, the Court has authority to exercise personal jurisdiction. *See id.* [3]

This does not end the inquiry, however, as the Court's exercise of jurisdiction must comport with the Due Process Clause of the Fifth Amendment. *See Wallace*, 86 F. Supp.2d 826 (recognizing that where a federal statute authorizes "nationwide service of process," the Due Process Clause of the Fifth Amendment, rather than the Fourteenth Amendment, limits jurisdiction). Where a district court's subject matter jurisdiction arises under a federal statute which allows for national service of process, due process is satisfied if the defendant has "sufficient minimum contacts with the United States." *See Medical Mut. of Ohio v. deSoto*, 245 F.3d 561, 566–68 (6th Cir. 2001); *accord Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369–71 (3d Cir. 2002); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989).

---

[2] Although the FDCPA permits the debtor to request a venue transfer to "the district court for the district in which the debtor resides" within twenty days of service, this provision need not be satisfied for a district court to effect service of process and exercise personal jurisdiction. *See id.* § 3004(b)(2). Indeed, this section implies that the original district court has personal jurisdiction over the defendant, and that transfer to the debtor's home district is simply a matter of venue. *See Reese Bros., Inc.*, 477 F. Supp. 2d at 39; *cf. Wallace v. Matthias*, 864 F. Supp. 2d 826, 833 (D. Neb. 2012) (differentiating service of process provisions from venue provision). In any event, however, the Defendants did not request a transfer to their home district within twenty days of service.

[3] Alternatively, Federal Rule of Civil Procedure 4(k)(1)(A) allows courts to exercise personal jurisdiction over a defendant who is subject to the jurisdiction of the forum state. Thus, if Michigan's long arm statute applies to the Defendants, this could serve as an alternative basis for the Court to issue summons for the Defendants. *See id.* However, because the Court has jurisdiction under Rule 4(k)(1)(C), it need not consider whether Michigan's long arm statute applies here.

This differs from the more common standard applied where a district court derives its personal jurisdiction over a defendant from the forum state's long arm statute.[4] *See, e.g., Alisoglu v. Central States Thermo King of Oklahoma, Inc.*, No. 12-10230, 2012 WL 1666426, at *5 (E.D. Mich. May 11, 2012). In these situations, due process is satisfied where the defendant has sufficient contacts with the forum state. *Id.* However, personal jurisdiction is not "based on federalism concerns"; rather, courts must have personal jurisdiction over defendants because the Due Process Clause protects individuals from exercises of "extra-territorial jurisdiction" by sovereigns with which the defendant has no meaningful relationship. *Medical Mut. of Ohio*, 245 F.3d at 567–68 (citing *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)); *see also Haile v. Henderson National Bank*, 657 F.2d 816 (6th Cir. 1981). In other words, due process simply requires that the defendant have sufficient ties to the sovereign seeking to exercise authority over him or her. *Medical Mut. of Ohio*, 245 F.3d at 567–68. Accordingly, where the sovereign exercising jurisdiction is the United States, due process requires only that the defendant have sufficient ties to the United States, not the forum state. *Id.*

The parties here do not dispute that the Defendants had sufficient minimum contacts with the United States to satisfy due process. Nor could they. Kathryn Sole is domiciled in Florida, and her limited liability company, Sole Law, is registered in St. Petersburg, Florida. (ECF No. 1, PageID.2, ¶¶ 2–3). Kathryn Sole is also a licensed Florida attorney, and she frequently litigates in Florida courts against other U.S. residents. (*Id.* at PageID.2, 8–9, 14, ¶¶ 3, 6, 60–61; ECF No. 1-6). Accordingly, I suggest that because this Court's exercise of personal jurisdiction

---

[4] This generally occurs either where the court has diversity jurisdiction over the matter, or where the court has federal question jurisdiction, but no federal statute authorizes service of process. *See* Fed. R. Civ. P. 4(k); *see, e.g., Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002); *Grewal v. Grewal*, No. 14-13228, 2014 WL 6675393, at *1–2 (E.D. Mich. Nov. 25, 2014).

8

is both authorized by federal law and consistent with the requirements of due process, the Court may exercise personal jurisdiction over both Defendants.

### 2. FDCPA

Concerned with what it saw as a "recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," Congress enacted the FDCPA protects consumers from "abusive" debt collection practices. *Federal Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 (6th Cir. 2007) (internal quotation marks omitted) (first quoting 15 U.S.C. § 1692(e) (2018); and then quoting *Swanson v. South Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)).

Given the FDCPA's goal of protecting vulnerable consumers from abusive debt collection practices, all FDCPA claims must establish two threshold elements. *See Estep v. Manley Deas Kochalski, LLC*, No. 13-3635, 2013 WL 185391, at *2 (6th Cir. Jan. 16, 2014). First, the FDCPA only applies to consumer debts which arise from a transaction for a good or service intended "primarily for personal, family, or household purposes"—commercial debts do not fall under the scope of the FDCPA. 15 U.S.C. § 1692a(5) (2018); *Bauman v. Bank of America, N.A.*, 808 F.3d 1097, 1100 (6th Cir. 2015). And second, the FDCPA only restricts the actions of "debt collectors"—individuals who either conduct "business" with the "principal purpose" of collecting debts, or "regularly" attempt to collect debts "asserted to be owed or due [to] another" individual. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698–99 (6th Cir. 2003) (quoting 15 U.S.C. § 1692a(6)).

Here, because the underlying transaction with Acuity was commercial, rather than personal, Lewis's obligation to Acuity does not constitute a consumer debt under the FDCPA.

Moreover, although Defendants regularly file lawsuits to collect payments from other realtors on behalf of Acuity, these debts, like Lewis's, are commercial, and therefore the Defendants are not debt collectors within the meaning of the FDCPA.

### a. Consumer Debt

The FDCPA only restricts the collection of "debts" which are held by "consumers." *Valhalla Investment Inv. Props., LLC, v. 502, LLC*, 832 F. App'x 413, 415 (6th Cir. 2020). A consumer, under the FDCPA, is a "natural person" who owes an alleged debt. 15 U.S.C. § 1692a(3). And a "debt," in turn, is an "alleged obligation of a consumer to pay money" that "arises from a transaction for a good or service" intended "primarily for personal, family, or household purposes." *Id.* § 1692a(5).

A "transaction" involves, "at a minimum," a "business dealing" or "consensual obligation." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371–73 (11th Cir. 1998); *accord Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 838 (11th Cir. 2010); *Fleming v. Pickard*, 581 F.3d 922, 926 (9th Cir. 2009). The nature of the transaction—whether it be for personal or commercial purposes—depends on the purpose for which the good or service was purchased at the time of the transaction—not the use of the subject matter of the transaction after-the-fact. *Haddad v. Alexander, Zelmanski, Danner & Fioritto*, PLLC, 698 F.3d 290, 293–94 (6th Cir. 2012).

Lewis concedes that his obligation to pay Acuity arises out of a transaction that was "unquestionably of a commercial character." (ECF No. 1, PageID.10, ¶ 44). Indeed, Lewis alleges that Acuity sued him to recover fees from a referral agreement between Acuity and Re/Max, two real estate brokerages. (*Id.* at PageID.3–5, ¶¶ 12–18). This was a transaction

10

between two businesses which in no way was intended for personal or household purposes. (*Id.*) Moreover, Lewis alleges that while he signed the agreement with Acuity, he *only* did so on behalf of Re/Max. (*Id.* at PageID.3, ¶ 13; ECF No. 9, PageID.423, 425). But a limited liability company, like Re/Max, is not capable of entering into transactions for personal or household purposes. *Valhalla Invest. Props., LLC v. 502, LLC*, 456 F. Supp. 3d 939, 947 (M.D. Tenn. 2020) (citing *Sequel Grp., Inc. v. Wilmington Sav. Fund Soc'y FSB*, No. 16-2056, 2018 WL 2321987, at *5 (N.D. Tex. Mar. 20, 2018)); *see Nationwide Mut. Fire Ins. Co. v. Pierce*, No. 13-606, 2013 WL 4518208, at *2 (M.D. Fla. Aug. 13, 2013) (recognizing that Re/Max is a limited liability company). Thus, because Lewis's obligation to Acuity did not arise out of a transaction intended for "personal, family, or household purposes," his obligation cannot constitute a debt under the FDCPA. *See* 15 U.S.C. § 1692a(5); *see also Haddad*, 698 F.3d at 293–94.

But although his obligation to Acuity did not arise out of a transaction that was intended for personal, family, or household purposes, Lewis argues his obligation to Acuity still constitutes a consumer debt because he was personally responsible for its payment. (ECF No. 1, PageID.44–48). Lewis explains that because Acuity sued him individually, he was personally responsible for the debt, and he therefore incurred the debt for "personal" purposes.

Lewis's argument fails because it conflates a "debt" with a "transaction." It is not the obligation to pay Acuity that must be for personal purposes; it is only the underlying *transaction* which gave rise to the obligation which must have been for personal purposes. See 15 U.S.C. § 1692a(5); *Haddad*, 698 F.3d at 293–94. However, Lewis admits that this *transaction* (the referral agreement between Acuity and Re/Max) was made for "commercial" purposes, and he pleads no facts suggesting otherwise. (ECF No. 1, PageID.10, ¶ 44). The fact that Lewis may

11

now be responsible for the obligation to pay does not change the nature of the transaction at the time it was made. *Cf. Camaj v. Makower Abbate Guerra Weggner Vollmer PLLC*, No. 19-10179, 2019 WL 6037597, at *4–5 (E.D. Mich. Nov. 14, 2019).

In support of his argument, Lewis cites *Sluys v. Hand*, 831 F. Supp. 321, 323 (S.D.N.Y. 1993) for the proposition that any debts incurred by a natural person, including those incurred for business purposes, are protected by the FDCPA. In *Sluys*, the court reasoned that because the FDCPA applies only to consumer debts, and because the FDCPA defines "consumer" as "any natural person," the Act covers any debt held by a natural person. *Id.* But the *Sluys* Court ignored that to be a "consumer," a natural person must also have an alleged debt which, under the FDCPA, must arise out of a transaction for personal, family, or household purposes. 15 U.S.C. § 1692a(3), (5); *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1076 (9th Cir. 2001). And for that reason, several courts and commentators have rejected *Sluys*'s proposition that business debts held by individuals can constitute debts under the FDCPA. *E.g.*, *DepoLink Court Reporting & Litig. Support Servs. v. Rochman*, 430 N.J. Super. 325, 335–36 (2013); (*Beaton v. Reynolds, Ridings, Vogt and Morgan, P.L.L.C.*, 986 F. Supp. 1360 (W.D.Okla.1998); Louis Rosenberg, *Complying with the Fair Debt Collection Practices Act*, 40–DEC Res Gestae 24, 25 n.22 (1996).

Alternatively, Lewis advances a more modest proposition. Citing *Hansen v. Ticket Track, Inc.*, 280 F. Supp. 2d 1196, 1204 (W.D. Wash. 2003), Lewis asserts that even if his personal obligation to pay Acuity does not necessarily constitute a debt, then his individual responsibility for payment is at least "nearly dispositive" evidence that he "incurred" the debt for personal, family, or household purposes. (ECF No. 9, PageID.422).

Again, Lewis appears to conflate a "transaction" with a "debt." But even reading Lewis's argument to mean that his personal responsibility for the referral fees indicates that the underlying transaction was intended for personal, family, or household purposes, Lewis's argument still fails. In *Hansen*, a group of plaintiffs brought an FDCPA claim against a debt collection company who attempted to collect fees from unpaid parking tickets issued by private parking lots. 280 F. Supp. 2d at 1198–99. After discovery, the collection company moved for summary judgment against three of the plaintiffs, arguing that because these plaintiffs could not "remember the reasons why they parked" in the lot, the plaintiffs could not establish that their use of the lot was intended for personal or household purposes. *Id.* at 1203–04. The court denied summary judgment, reasoning that while the plaintiffs' motivation for parking in the lot was a relevant factor, it would almost certainly be outweighed by the fact that they transacted with the parking lots as individuals. *Id.* at PageID.1204. This is because the purpose of the transaction between the plaintiffs and the parking lot could not be equated with the purpose of whatever errand—whether personal or for business—the plaintiffs "happened to be running" when they parked in the lot. *Id.* In other words, the relevant inquiry was whether the plaintiffs' transactions with the parking lot, in themselves, had a personal or commercial purpose, not whether the plaintiffs parked in the course of some business-related activity. *Id.* Unsurprisingly, the court found it difficult to imagine how an individual's use of a private parking lot could constitute a commercial transaction. *Id.*

Unlike in *Hansen*, Lewis's individual responsibility to pay Acuity does not indicate that the referral agreement between Re/Max and Acuity was intended primarily for personal purposes. In *Hansen*, the purposes of the plaintiffs' transactions were uncertain, but under the

13

circumstances of that case, it seemed unlikely that the plaintiffs would have paid to use a private parking lot for anything other than a personal reason. *See id.* Here, however, there is no such uncertainty. Lewis stresses that the referral agreement was exclusively between two real estate brokerages and that it was "unquestionably of a commercial character." (ECF No. 1, PageID.11, ¶ 44; ECF No. 9, PageID.423, 425). The fact that an individual might be personally responsible for the referral fees does not change the fact that the referral agreement was a commercial transaction. Thus, Lewis's personal responsibility for the debt does not rescue him from his failure to plead any facts indicating that the referral agreement was intended for personal, family, or household purposes. Accordingly, I suggest that Plaintiff has failed to state a plausible claim for relief under the FDCPA.

        **b.**    **Debt Collector**

I also suggest that Lewis fails to state a plausible claim for relief because he does not allege that Defendants are debt collectors. Under the FDCPA, a debt collector is either a person who conducts a business with "the principal purpose of" collecting debts, or a person "who regularly collects" debts on behalf of others. 15 U.S.C. § 1692a(6).

Lewis does not allege that Defendants collect "debts," and therefore he cannot establish that the Defendants are debt collectors under either definition. In his complaint, Lewis alleges that the Defendants filed thirty lawsuits on behalf of Acuity since 2014. (ECF No. 1, PageID.7, 14, ¶ 31, 60). Each case was a "debt collection[]" brought against a "salesperson in" his or her "personal capacity," rather than "the broker that contracted with Acuity." (*Id.* at PageID.7, 14, ¶¶ 31–32, 60; ECF No. 1-6). But as discussed, these "debt" collections do not arise from transactions intended primarily for personal, family, or household purposes, and therefore they

are not "debts" as defined by the FDCPA. Because Lewis does not allege that Defendants have ever collected any debts, he cannot establish that they are debt collectors. Accordingly, Lewis fails to state a plausible claim for relief under the FDCPA.[5]

## III. CONCLUSION

For these reasons, I **RECOMMEND** that the Court **GRANT** Defendants' motion to dismiss (ECF No. 6) and **DISMISS** Plaintiff's complaint.

## IV. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

---

[5] Defendants make several alternative arguments for why count two of Lewis's complaint should be dismissed for failure to state a claim. However, because neither of Lewis's claims fall under the ambit of the FDCPA, the Court need not reach these issues.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 22, 2022
S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge